**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.L., I.L., and Z.L.**

**No. 20-0230** (Hancock County 18-JA-65, 18-JA-66, and 18-JA-67)


**MEMORANDUM DECISION**



Petitioner Father I.P., by counsel Ann Marie Morelli, appeals the Circuit Court of Hancock County's February 20, 2020, order modifying and accepting a final parenting plan for A.L., I.L., and Z.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Shannon Price, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in modifying and accepting the shared parenting plan because it lessened petitioner's parenting time with I.L. and Z.L., impacted sibling visitation between the children, failed to consider A.L.'s preferences, and improperly considered I.L. and Z.L.'s preferences. Petitioner also argues that the circuit court violated his due process rights by failing to hold an evidentiary hearing upon the proposed modifications to the final shared parenting plan.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in failing to apply the statutory analysis found in West Virginia Code §§ 48-9-206, 207, and 209, in determining custodial allocation. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand the matter to the circuit court.

In October of 2018, the DHHR filed an abuse and neglect petition alleging that the mother's severe alcohol abuse negatively impacted her ability to parent the children, who were removed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

from her care and placed with petitioner, their nonabusing father.[2] By December of 2018, the mother was adjudicated as an abusing parent and granted an improvement period. After the successful completion of the mother's improvement period, in June of 2019, the DHHR filed an amended petition seeking custodial allocation. Thereafter, the guardian filed a report stating that after speaking with the children's counselor, she recommended a "week on week off" parenting plan that would have placed all three children in petitioner's home for one week followed by the mother's home for one week. According to the counselor, the children wished to have more parenting time with petitioner and this plan maximized sibling visitation for the three closely bonded sisters. A review hearing was held in July of 2019, wherein the child abuse and neglect petition was dismissed, and the circuit court adopted the guardian's recommended parenting plan. However, the circuit court ordered petitioner and the mother to agree to a final shared parenting plan to be adopted at a later date.

The parents, having failed to agree to a final shared parenting plan, submitted proposed orders to the circuit court. Meanwhile, the guardian interviewed I.L. and Z.L., ages twelve and seven respectively, who stated that they wished to primarily live with the mother but wanted more parenting time with petitioner. The circuit court held the final shared parenting plan in abeyance until January of 2020, when it adopted a final parenting plan without holding a hearing. Based upon A.L.'s wishes, the circuit court ordered that she live with petitioner who would be designated as her primary custodian. Petitioner was further ordered to facilitate bimonthly therapy sessions between the mother and A.L. In turn, the mother was designated the primary custodian of I.L. and Z.L., and petitioner was allocated visitation with them every first, second, and fourth weekend. During the summer, the parents would assume an alternating weekly schedule of custody over all three children. Thereafter, petitioner filed a motion to reconsider the plan, but the circuit court denied the motion and entered an order with the same final parenting plan with an additional weekend of visitation for petitioner and a term allowing for the children to request additional parenting time. The circuit court entered the final order on February 20, 2020. Petitioner now appeals that order.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]Prior to the abuse and neglect proceeding, petitioner and the mother shared custody of the children with a parenting plan designating the mother as the primary custodian and petitioner exercising regular visitation the children.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's various assignments of error all call into question the appropriateness of the circuit court's final parenting plan on the basis that it was not in the children's best interests and was based on factors that petitioner alleges were inappropriate to consider, such as stated preferences from two of the children who were well below fourteen years old. It is unnecessary to address these specific arguments, however, because our ultimate determination is controlled by the circuit court's failure to include specific findings and analysis set forth under Chapter 48 of the West Virginia Code.

Upon our review of the order on appeal, we note a stark absence of the mandatory considerations and procedure for a custodial allocation found in Chapter 48 of the West Virginia Code. Recently, this Court considered whether "allocation of custody [following the dismissal of a child abuse and neglect petition] is governed by the precepts established in our abuse and neglect caselaw or the statutory considerations mandated for the allocation of child custody and decision making responsibilities," as found in West Virginia Code §§ 48-9-206, 207, and 209. *In re T.M.*, 242 W. Va. 268, 276, 835 S.E.2d 132, 140 (2019). We considered that the framework found in West Virginia Code § 48-9-206(a) "sets forth the essential criteria which, in the collective wisdom of the legislature, serve a child's interests" and codified the "best interests" analysis that permeates our holdings related to abuse and neglect proceedings. *Id*. at 278, 835 S.E.2d at 142. Additionally, we noted that the provisions of West Virginia Code § 48-9-209 "bestow broad discretion on a court making a custodial allocation to ensure that a child is protected from any harm the abuse and neglect findings potentially forecast." *Id*. at 279, 835 S.E.2d at 143. To that end, we emphasized that subsection (c) of that section imposes a "mandatory duty upon a court making custodial allocations to make special *written* findings demonstrating that any such allocation includes limitations which will adequately protect the child from potential harm as a result of the abuse and neglect findings of which the court is aware." *Id*. Based on these considerations, we crafted the following syllabus point:

> A circuit court is obligated to apply the factors and considerations set forth in West Virginia Code §§ 48-9-206 (2018) and -207 (2001) in allocating custodial and decision-making responsibilities when reunifying children subject to abuse and neglect proceedings with parents, guardians, or custodians who are no longer cohabitating at the close of the proceedings. Where findings of abuse and/or neglect have been established, the circuit court must further employ the mandatory considerations and procedures set forth in West Virginia Code § 48-9-209 (2016), in order to protect the children from further abuse and/or neglect.

*T.M.*, 242 W. Va. at 269, 835 S.E.2d at 132, syl. pt. 5.

Here, just as in *T.M.*, we find no demonstrable evidence that the circuit court employed the analysis required by West Virginia Code §§ 48-9-206 and 207. As we held in *T.M.*, we again conclude that "[g]iven the absence of discussion of the applicability of the factors or reference

thereto, we cannot simply presume that the court considered these factors and affirm on that basis." *Id*. at 280, 835 S.E.2d at 144. Moreover, the mother's adjudication as an abusive and neglectful parent, regardless of her success in remedying those conditions of abuse and neglect, imposed an additional statutory consideration upon the circuit court pursuant to West Virginia Code § 48-9-209, which mandates special written findings in that regard. Accordingly, we must vacate the circuit court's allocation of custodial responsibilities and remand for consideration of the factors set forth in West Virginia Code §§ 48-9-206 and 207, as well as the limitations and procedures mandated by West Virginia Code § 48-9-209.[3]

For the foregoing reasons, we vacate the circuit court's February 20, 2020, order as it relates to the circuit court's allocation of custodial responsibility and remand for further proceedings consistent with this decision.[4] The circuit court is directed to hold the hearings it deems necessary, if any, and issue a final order for this case in the next sixty days. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[3]To the extent petitioner's assignments of error assert that the circuit court simply erred in its custodial allocation by deviating from the week on week off parenting plan and failed to hold an evidentiary hearing, we similarly find that our remand of this matter moots these arguments.

[4]We further instruct the circuit court that, on remand, any court-appointed attorneys and the guardian ad litem are to continue their involvement until permanent placement is achieved through the custodial and decision-making allocations required herein. *See* Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 649, 408 S.E.2d 400, 401 (1991) ("The guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home."). Permanent placement of the children is required to bring the abuse and neglect proceedings in the instant case to a conclusion and that has not yet occurred. Therefore, any such court appointments continue to be in effect. *But cf. In. Int. of Z.D.,* 239 W. Va. 890, 896, 806 S.E.2d 814, 820 (2017) (disapproving use of court-appointed counsel and guardian ad litem after dismissal of child abuse and neglect case where parent attempted to resolve a motion for custody).